IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARIAH C.,[1]

        Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Case No. 6:24-cv-01927-AB

OPINION & ORDER

Nancy J. Meserow
Law Office of Nancy J. Meserow
7540 SW 51st Avenue
Portland, OR 97219

        Attorney for Plaintiff

Kevin C. Danielson
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Noah Schabacker
Office of Program Litigation, Office 7
Office of the General Counsel
Social Security Administration
6401 Security Boulevard
Baltimore, MD 21235

      Attorneys for Defendant

**BAGGIO, District Judge:**

      Plaintiff Mariah C. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reverses the Commissioner's decision and remands this case for immediate payment of benefits.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on May 29, 2018, alleging an onset date of October 11, 2017. Tr. 70-71.[2] Plaintiff's date last insured ("DLI") is December 31, 2027. Tr. 1691. Her application was denied initially and on reconsideration. Tr. 112-121.

      On March 21, 2021, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 30-68. On April 12, 2021, the ALJ found Plaintiff not disabled. Tr. 10-23. The Appeals Council denied review. Tr. 1. Plaintiff appealed, and this Court remanded the ALJ's decision for further proceedings. Tr. 1780-95. On September 12, 2024, Plaintiff appeared with counsel for her second hearing before an ALJ. Tr. 1718-51. On September 18, 2024, the ALJ again found Plaintiff not disabled. Tr. 1688-1708. This timely appeal followed. Compl., ECF No. 1.

---

      [2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as ECF No. 8.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on fibromyalgia; chronic headaches; anxiety with panic attacks; irritable bowel syndrome; nausea; vomiting; muscle spasms; weakness and chronic fatigue; insomnia; difficulty focusing, concentrating, and remembering; depression; hypermobility; and pain in her jaw, neck, shoulders, back, and legs. Tr. 71. At the time of her alleged onset date, she was 35 years old. Tr. 70. She has at least a high school education and past relevant work experience as a veterinary assistant. Tr. 1706.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if

not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the

claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to

the Commissioner. In step five, the Commissioner must establish that the claimant can perform

other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the

Commissioner meets their burden and proves that the claimant can perform other work that

exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566,

416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity

after her alleged onset date during the second quarters of 2023 and 2024. Tr. 1691. The ALJ,

however, also concluded there had been a continuous 12-month period where Plaintiff did not

engage in substantial gainful activity. Tr. 1691-92. Next, at steps two and three, the ALJ

determined that Plaintiff has the following severe impairments: "multi-level degenerative disc

disease; small fiber neuropathy; tension headaches; fibromyalgia; chronic fatigue syndrome;

major depressive disorder; panic disorder with agoraphobia; post-traumatic stress disorder

(PTSD)." Tr. 1692. However, the ALJ determined that Plaintiff's impairments did not meet or

medically equal the severity of a listed impairment. Tr. 1693-96. At step four, the ALJ concluded

that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R.

§§ 404.1567(b) with the following limitations:

> [L]ifting/carrying/pushing/pulling of 20 pounds occasionally and 10 pounds or less frequently, can sit 6 hours in an 8-hour workday, can stand/walk in combination 6 hours in an 8-hour workday, except she can occasionally climb ramps and stairs, must avoid ladders, ropes, and scaffolds, can occasionally stoop, kneel, crouch, and crawl; is limited to simple and routine tasks, simple work-related decisions, occasional interaction with coworkers, supervisors, and the general public, and would be off task up to 5% of the workday.

Tr. 1696.

Because of these limitations, the ALJ concluded that Plaintiff could not perform her past

relevant work. Tr. 1706. But at step five, the ALJ found that there are jobs that exist in

significant numbers in the national economy that Plaintiff can perform, such as routing clerk,

router, and marker. Tr. 1707. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 1708.

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings "are based on legal error or are not supported by substantial evidence

in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.* (citation and internal quotation marks omitted). The court considers

the record as a whole, including both the evidence that supports and detracts from the

Commissioner's decision. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where

the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be

affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also*

*Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can

support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.")

(internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred in (1) discounting Plaintiff's subjective symptom

testimony as to her migraines and headaches and (2) failing to apply Social Security Ruling

("SSR") 19-4p when evaluating whether Plaintiff's migraines and tension headaches equaled

Listing 11.02B at step three. The Court agrees.[3]

## I.    Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL

5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom

evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012), *superseded on other grounds*

*by* 20 C.F.R. § 404.1502(a). First, the ALJ determines whether there is "objective medical

evidence of an underlying impairment which could reasonably be expected to produce the pain

or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has

presented such evidence, and there is no evidence of malingering, then the ALJ must give

specific, clear and convincing reasons in order to reject the claimant's testimony about the

severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient."

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834

(9th Cir. 1995) *superseded on other grounds as recognized by Arnott v. O'Malley*, No. 23-15814,

2024 WL 2237720 (9th Cir. May 17, 2024)). "An ALJ does not provide specific, clear, and

---

[3] The Court limits its discussion to the ALJ's analysis of Plaintiff's subjective symptom
testimony and step three findings regarding Plaintiff's primary headache disorder as both issues
are dispositive in this case.

convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (holding the reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony").

Plaintiff suffers from unpredictable, chronic pain caused in part by tension headaches and migraines. Tr. 37, 283. Her tension headaches are chronic and recurring, making it difficult for Plaintiff to concentrate and focus. Tr. 38, 283. Activity triggers her headaches. Tr. 283. Plaintiff's migraines began after a concussion in 2020. Tr. 38, 615, 805. Though her migraines have improved slightly over time, Plaintiff testified at her second hearing that she usually has two or three migraines per week. Tr. 1727. But this number can fluctuate. Some weeks, she will "get four or five." Tr. 1727. When Plaintiff is lucky, she may go a week without any migraines at all. Tr. 1727. Her tension headaches, by comparison, are always in the background and have not improved. Tr. 1727. Though Plaintiff takes medication, it does an inadequate job of treating and preventing her pain. Tr. 283. But she cannot manage even minor tasks without it. Tr. 283. The medication also causes side effects. It makes her feel "fuzzy and clouded," dizzy, fatigued, and forgetful. Tr. 283.

Plaintiff has worked part-time in a veterinarian's office throughout the relevant period with a flexible schedule and duties. At the time of the second hearing, Plaintiff was working two to three non-consecutive six-hour shifts a week. Tr. 1725. She testified that she cannot work full time because she cannot work on consecutive days due to her headaches and chronic pain. Tr.

1725. Her pain and fatigue are worse the day after a shift. Tr. 1726. Because of her migraines, Plaintiff sometimes has to leave work early to lay in a dark room with no stimulation. Tr. 1726. Her employer is accommodating. Tr. 53.

Plaintiff lives with her son, who was 12 years old at the time of the first hearing in 2021. Tr. 35. Beginning with her 2018 function report, Plaintiff consistently notes that her son helps with her daily activities. Even at age ten, Plaintiff's son would help care for the cat and do laundry. Tr. 284, 286. As he has gotten older, he continues to help by putting groceries away, cooking some of their meals, and completing household chores and yardwork. Tr. 42-43, 1738. Friends and family also help Plaintiff by picking up her son from school and helping with tasks around the house. Tr. 45, 284, 1738. She also has groceries delivered to their home, and friends help with cleaning and yardwork. Tr. 42-43, 284, 285. Plaintiff cooks some of their meals, but most are frozen or simple. Tr. 42, 285. Plaintiff only does light chores. Tr. 1739.

Plaintiff otherwise spends her days taking her son to school, going to medical appointments, playing board games, reading, going to church, visiting her parents, and caring for her small pets. Tr. 284, 287, 1739. She enjoys writing, sketching, helping her son with homework, birdwatching, and spending time outside. Tr. 45. Plaintiff sometimes goes to movies and concerts. Tr. 1739. She naps every day. Tr. 55.

The ALJ gave three reasons for discounting Plaintiff's subjective symptom testimony as to her migraines. First, the ALJ found that Plaintiff's activities of daily living are greater than alleged and conflict with her reports of difficulty functioning due to migraines. Tr. 1701. Second, the ALJ found that Plaintiff's testimony that her "constant headache and frequent migraines prevented all activities but recovery in a dark room" conflicted with chart notes that she was "consistently in no acute distress, able to speak in full sentences, alert and oriented, and had

normal concentration." Tr. 1699. Third, the ALJ emphasized that Plaintiff reported relief from headaches with Botox treatment. Tr. 1699. As none of these reasons are supported by substantial evidence in the record, the Court finds that the ALJ erred in discounting Plaintiff's subjective symptom testimony.

A.    Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,"  *Reddick*, 157 F.3d at 722, and "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking or exercise does not in any way detract from [their] credibility," *Webb v. Banhart,* 433 F.3d 693, 688 (9th Cir. 2005) (citing *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick,* 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722–23

Here, the ALJ found that "[t]he record reflects greater activities than alleged," which "conflict with [Plaintiff's] reports of difficulty with even basic functioning, and frequent prostrating migraines." Tr. 1701. In so finding, the ALJ specifically cited Plaintiff's ability to "parent her child as a single parent," including making her child breakfast, driving, and handling

household chores. Tr. 1701. He also cited Plaintiff's ability to bike and participate in dances. Tr. 1701. The ALJ reasoned that these activities do "not support her reports of extreme weakness, fatigue, and migraines, with inability to lift, bend, and pull." Tr. 1701. While the ALJ acknowledged that Plaintiff's "symptoms wax and wane" and that Plaintiff "often recovers the day after an activity," he concluded that Plaintiff's "regular functioning generally supports the above residual functional capacity assessment." Tr. 1701.

The ALJ erred in discounting Plaintiff's testimony regarding her migraine symptoms because of her activities of daily living. Turning first to Plaintiff's ability to care for her son, the Court finds that the ALJ misconstrued the record. Plaintiff described receiving significant help from friends and family with taking care of her family's needs. Tr. 42-43, 45, 284-85, 1738. And from age ten, Plaintiff's son helped with many household chores. Tr. 42-43, 284, 286, 1738. Plaintiff's activities are limited to simple, nonstrenuous tasks. Tr. 42, 285 (describing cooking only simple, frozen meals and limited household chores), 1739 (does light chores). These limited activities in caring for herself and her child are not inconsistent with Plaintiff's testimony that she suffers from sudden, frequent migraines and often needs to lay in a dark room without stimulation.

As to Plaintiff's ability to bike and dance, however, the ALJ reasonably describes Plaintiff's statements to medical providers regarding these activities. In 2019, Plaintiff reported to one medical provider that she was "feeling a little better after riding bike." Tr. 434. She told another that she cycles in the summer. Tr. 720. And to her mental health providers in 2019 and early 2020, Plaintiff reported doing Zumba when she could, Tr. 720, dancing for two weeks straight, Tr. 787, and swing dancing on four other occasions, Tr. 782, 799, 2614, 2616. These notes, however, are largely from 2019 and early 2020 and predate Plaintiff's migraines, which

began after a concussion in November 2020. Tr. 615, 805. In addition, most of these records are mental health treatment notes from a short window of time after the loss of Plaintiff's fiancé. Tr. 739, 781-799. And in a more recent chart note from 2022, Plaintiff explained that after she worked a full day and went swing dancing the following day, she was "paying the price" for not doing enough to rest or recover. Tr. 2616. These records, standing alone, do not constitute substantial evidence. Therefore, the Court finds that the ALJ erred in concluding that Plaintiff's subjective symptom testimony was inconsistent with her activities of daily living.

B.    Objective Medical Evidence

The ALJ is instructed to consider objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms . . . ."). Inconsistency between Plaintiff's testimony and the objective medical record is a valid reason to discount Plaintiff's testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding where the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). And under certain circumstances, the ALJ can discount claimant testimony when that testimony is not supported by the objective medical record. *See Batson v. Comm'r,* 359 F.3d 1190, 1196 (9th Cir. 2007) ("'Graphic and expansive'" pain symptoms could not be explained on objective, physical basis by claimant's treating physician); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (finding the ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain). However, this may not be the ALJ's sole reason for discounting a claimant's testimony: "[T]he Commissioner may not discredit the claimant's testimony as to the severity of

symptoms merely because they are unsupported by objective medical evidence." *Reddick,* 157 F.3d at 722.

The ALJ concluded that Plaintiffs' migraines and headaches were inconsistent with providers' notes that Plaintiff was in no acute distress, able to speak in full sentences, alert and oriented, and had normal coordination. Tr. 1699. But these chart notes are from mental status exams, which are "used to evaluate the patient's level of consciousness and the content of the consciousness." George Newman, M.D., Ph.D., *How to Assess Mental Status*, Merck Manual: Professional Edition (Aug. 2025), https://perma.cc/EY2J-EVBS. Specifically, the mental status exam asks whether a patient is "alert" or "actively perceiving the world around them and able to anticipate the examiners and their own next actions." *Id.* The exam also asks whether there are any suggestions of cognitive decline. *Id.* A normal mental status exam—i.e. the patient is not unconscious and there is no indication of cognitive decline—is not inconsistent with Plaintiff's migraines or headaches. The ALJ, therefore, erred in discounting Plaintiff's subjective symptom testimony because of Plaintiff's normal mental status exams.

C.    Effective Treatment

The ALJ may rely on evidence of effective treatment. *See Orteza*, 50 F.3d at 750 ("Factors that the adjudicator may consider when making such credibility determinations include the . . . effectiveness or adverse side effects of any pain medication."); *Tommasetti*, 533 F.3d at 1040 (finding claimant's testimony undermined by the fact he responded well to conservative treatment). But where "[c]ycles of improvement and debilitating symptoms are a common occurrence," an ALJ errs by "pick[ing] out a few isolated instances of improvement over a period of months or years and . . . treat[ing] them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

Here, the ALJ's conclusion is not supported by substantial evidence in the record. In his decision, the ALJ cites a single treatment note that Plaintiff was "getting [B]otox[,] which provides relief from headaches." Tr. 3944. But this note was from a registered dietician who helped Plaintiff adjust her diet to manage her fibromyalgia. Tr. 3944. And this isolated note conflicts with the rest of Plaintiff's treatment records, which show that Botox injections improved—but did not eliminate—Plaintiff's migraines and tension headaches. *See, e.g.,* Tr. 3984, 4036, 4410. Consistent with Plaintiff's hearing testimony, Plaintiff's migraines reduced by about half but still occurred seven times per month on average after her Botox injections. Tr. 4410 (noting reduction in migraine frequency by 50%, but still having approximately seven per month). The ALJ therefore erred in discounting Plaintiff's testimony regarding her migraines because of a single chart note from her dietician.

In sum, the ALJ has not provided clear or convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom testimony. The Court finds that the ALJ erred.

## II.    Step Three

At step three of the sequential analysis, if a claimant meets or medically equals a listed impairment, then they are presumed disabled regardless of their age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d). A claimant bears the burden of producing medical evidence to establish all of the requisite medical findings that their impairments meet or equal any particular listing. *Yuckert*, 482 U.S. at 146, n.5. An impairment, or combination of impairments, is medically equivalent to a listing "if it is at least equal in severity and duration to the criteria of any listed impairment," considering, "all evidence in [the] case record about [the] impairment(s) and its effects on [the claimant] that is relevant . . . ." 20 C.F.R. § 404.1526(a), (c).

Finally, "the claimant's illnesses 'must be considered in combination and must not be fragmentized in evaluating their effects.'" *Lester,* 81 F.3d at 829 (quoting *Beecher v. Heckler*, 756 F.2d 693, 694–95 (9th Cir.1985)). "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Id.*

Here, Plaintiff argues the ALJ erred in assessing whether Plaintiff's headaches meet or medically equal a listed impairment. Pl.'s Br. 1-12, ECF No. 9. SSR 19-4p addresses primary headache disorders and identifies Listing 11.02 for epilepsy as being "the most closely analogous." *See* SSR 19-4p, 2019 WL 4169635. Relevant here is Listing 11.02B, which requires a documented detailed description of a seizure and seizures "occurring at least once a week for three consecutive months despite adherence to prescribed treatment." Listing 11.02B, 20 C.F.R. § Pt. 404, Subpt. P, App. 1. To determine "whether a primary headache disorder is equivalent in severity and duration to the criteria in Listing 11.02B," the agency will consider:

> [A] detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p.

Here, the ALJ stated that "the record does not contain objective evidence to support the claimant's alleged headache frequency and severity." Tr. 1694. The ALJ then explained that Plaintiff was in no acute distress, was able to speak in full sentences, was alert and oriented, and had normal coordination at various places in the record. Tr. 1694. He concluded that these normal mental status exams do not "support such frequency and duration of headache symptoms." Tr. 1694. The Commissioner makes a similar argument in his brief. *See* Def.'s Br. 5, ECF No. 15.

As explained above, the ALJ erred in focusing on Plaintiff's normal mental status exams to discount the severity of Plaintiff's headache disorder. *See supra* Part I. Moreover, SSR 19-4p and Listing 11.02B do not require Plaintiff to show that she was in acute distress, lacked the ability to speak in full sentences, was not alert and oriented, or lacked normal coordination. Indeed, Plaintiff's cognitive functioning has little bearing on the diagnosis, evaluation, frequency, or duration of Plaintiff's migraines and headaches. *See* SSR 19-4p. In sum, the ALJ erred in his assessment of whether Plaintiff met the requirements of Listing 11.02B.

In addition, the record shows that Plaintiff meets all the criteria of Listing 11.02B as described by SSR 19-4p. Turning first to the requirement that Plaintiff have a documented and detailed description of her headaches, Plaintiff was observed by at least two different acceptable medical sources having a typical tension headache event with accompanying symptoms, including "increased tissue tension, altered tissue texture, asymmetrical temperature changes, and . . . decreased range of motion and/or altered symmetry" in Plaintiffs head and neck. Tr. 4495; *see, e.g.,* Tr. 2388-89, 2409, 2471. Plaintiff also reported "squeezing, pressure like headaches." Tr. 1674. As to her migraines, Plaintiff reported migraines lasting all day, with light and sound sensitivity, nausea and rare vomiting, and severe, throbbing bilateral pain. Tr. 1674.

Plaintiff also documented the frequency of her headaches, noting at various places in the record that they lasted for days and were occurring multiple times per week, every week. Tr. 655 ("near constant" headaches), 702 (weekly headaches), 944 (headaches three to four times per week), 1674 (two days per week of severe migraines with nausea and sensitivity), 2327 (constant headaches), 2379 (pain in back of head all the time), 3466-3478 (headache diary documenting near daily headaches), 3566 (migraines fifteen days each month), 4041 (reporting fifteen headaches per month lasting more than four hours), 4561-72 (headache diary documenting near daily headaches).

Despite adherence to prescribed treatment—which has included opiate medication, acupuncture, physical therapy, Botox injections, and chiropractic treatment—Plaintiff continued to experience headaches. Tr. 3566. Even after some improvement after treatment with Botox, Plaintiff experienced two headaches per week. Tr. 3984, 4036, 4410. And throughout Plaintiff's extensive medical history, there are multiple references to side effects from medication, including brain fog, dizziness, drowsiness, fatigue, and nausea. Tr. 283, 289, 2233, 2812, 3139, 3566.

As to her limitations, Plaintiff testified that when her tension headaches become migraines, she takes refuge in a dark room. Tr. 1726. Plaintiff requires assistance from family and friends in her activities of daily living, and she can only do light chores. Tr. 42, 43, 45, 284-286, 559, 849, 1738, 2332. And Plaintiff sometimes misses work or leaves early when experiencing a headache episode. Tr. 365, 1726, 1950. In sum, looking to the specific evidence that the agency considers in assessing whether a headache disorder meets a listing, *see* SSR 19-4p, the record shows that Plaintiff meets the requirements of Listing 11.02B.

### III.    Remand for Benefits

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) (finding the "credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.* The "ordinary remand rule" is the proper course except in rare circumstances. *Treichler*, 775 F.3d at 1101 (finding that when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule").

Remand for immediate payment of benefits is appropriate in this case. First, as described above, the ALJ erred in his rejection of Plaintiff's subjective symptom testimony and in his assessment of Plaintiff's headaches and migraines at step three. Second, the record is fully developed, and remand for additional proceedings would serve no useful purpose. Indeed, this is the second appeal of this case, and the second time the Court has addressed the ALJ's errors. *See Mariah C. v. Kijakazi*, Case No. 6:22-cv-614-SI, 2023 WL 5827681 (D. Or. Sept. 8, 2023). Further proceedings "would needlessly delay effectuating the primary purpose of the Social Security Act," which is "to give financial assistance to disabled persons. . . ." *Holohan*, 246 F.3d at 1210. Finally, when crediting Plaintiff's testimony as true and viewing the medical record as a whole, substantial evidence demonstrates that Plaintiff meets or equals Listing 11.02B. Thus,

Plaintiff is "presumed disabled, and no further inquiry is necessary." *Baxter v. Sullivan*, 923 F.2d 1391, 1395 (9th Cir. 1991); *see also Zebley*, 493 U.S. at 532 (emphasizing the listings were "designed to operate as a presumption of disability that makes further inquiry unnecessary"). Accordingly, the Court reverses the Commissioner's decision and remands this case for an immediate award of benefits.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for immediate payment of benefits.

IT IS SO ORDERED.

DATED this  6th  day of November, 2025.

*Amy M. Baggio*
_____
AMY M. BAGGIO
United States District Judge